IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br>　　　　　Plaintiff,<br>vs.<br>Adam Christopher Sheafe,<br>　　　　　Defendant. | CR16-438-TUC-RCC(JR)<br><br>**REPORT AND RECOMMENDATION** |

On March 19, 2018, Defendant filed a Motion to Dismiss Indictment for Violation of Interstate Agreement on Detainers (Doc. 95). The Government filed a Response on March 26, 2018 (Doc. 96) and the Defendant filed a Reply on April 4, 2018 (Doc. 97). The Motion was heard by Magistrate Judge Rateau on April 19, 2018. Having considered the matter, the Magistrate Judge recommends that Defendant's Motion be DENIED.

**I.　UNDISPUTED FACTS**

On January 27, 2016, while the Defendant was serving a state prison sentence in Nevada, the Pima County Attorney's Office filed a detainer with the Nevada Department of Corrections pursuant the Interstate Agreement on Detainers (IAD), 18 U.S.C. App. II, § 1, et seq. The Defendant was under indictment on three felony cases in Arizona. On

March 8, 2016, Nevada acknowledged receipt of the detainer and provided information to Pima County about the Defendant's location and inmate status. On April 14, 2016, the administrative details of the transfer were complete and Pima County sent a letter to Nevada accepting temporary custody of the Defendant under the IAD.

Meanwhile, on March 2, 2016, the Defendant, along with his co-defendant and wife, Jane Sheafe, were indicted by a Federal Grand Jury and charged with Conspiracy to Commit Bank Fraud, Bank Fraud, and Aggravated Identity Theft. (Doc 3). On April 7, the Government filed an Application for Writ of Habeas Corpus Ad Prosequendum (Writ) with this Court. (Doc 21). The Writ was granted on April 11, 2016, and on April 15, 2016, the U.S. Marshals Service took custody of the Defendant and transported him to Federal Court where he had an initial appearance on April 26, 2016.

Trial was originally scheduled for June 21, 2016. It is now scheduled for June 5, 2018. Defendant agreed to all but three of the continuances.

## II. THE IAD

The IAD is a compact entered into by 48 States (Louisiana and Mississippi are the exceptions), the federal government, and the District of Columbia to establish procedures for resolution of one jurisdiction's outstanding charges against a prisoner or inmate who is in the custody of another jurisdiction. *New York v. Hill*, 528 U.S. 110, 111 (2000). The purpose of the IAD is to minimize the adverse impact of a foreign prosecution on the rehabilitative programs of the confining jurisdiction. *United States v. Johnson*, 953 F.2d 1167, 1170 (9th Cir. 1992).

When an inmate is transferred from a jurisdiction where he is serving a sentence

("the sending state") to a jurisdiction where an indictment is pending ("the receiving state"), the IAD imposes time limits within which the receiving state must bring the prisoner to trial. The time limits differ depending on whether it is the inmate or the receiving state that requested the transfer. If the inmate requested the transfer, the receiving state must try him within 180 days of his arrival. 18 U.S.C. app. II, § 2, art. III(a). If the receiving state requested the transfer, it must try the inmate within 120 days of his arrival. 18 U.S.C. app. II, § 2, art. IV(c).

The IAD timeline is not absolute and a court, upon good cause showing, may grant any necessary or reasonable continuances. 18 U.S.C. App. II, § 2, article IV(c). This "'necessary or reasonable continuance' provision is, by clear implication, the sole means by which the prosecution can obtain an extension of the time limits over the defendant's objection." *Hill*, 528 U.S. at 116. The IAD does not define "good cause." *Brown v. Wolff*, 706 F.2d 902, 906 (9th Cir. 1983). Nor do the various legislative histories of the original drafting of the IAD by the Joint Committee on Detainers. *Id.*

### III. ANALYSIS

Defendant contends that his indictment must be dismissed because he has not been tried within 120 days of the federal government taking custody of him. The Government argues that the IAD does not even apply to Defendant's case because it secured Defendant's transfer by means of a Writ rather than a federal detainer. Defendant counters that interpreting the provisions of the IAD in this manner, creates a loophole that permits the Government to avoid the IAD's strict time limits.

The Supreme Court addressed this exact issue in *United States v. Mauro*, 436 U.S.

340 (1978). While warning that the government should not circumvent the IAD by means of a writ, the Court nonetheless ruled that a writ of habeas corpus ad prosequendum, like the one filed in this case, is *not* a detainer within the meaning of the IAD. *Mauro*, 436 U.S. at 349. Defendant is not entitled to relief on this ground because he was transferred from Nevada to federal custody in Arizona pursuant to a writ not a federal detainer. *See also United States v. Moore*, 822 F.2d 35, 37 (8th Cir.1987) (The IAD is inapplicable when the government secures the presence of a state prisoner by means of a writ of habeas corpus ad prosequendum without filing a detainer.); *Baxter v. United States*, 966 F.2d 387 (8th Cir.1992) (same).

Even assuming the IAD applies to this case, the Government argues it has not violated the IAD's stringent 120-day time limit because the trial continuances were based on "good cause" which made it "necessary and reasonable" to continue the trial. The Court agrees.

At the hearing on October 11, 2017, defense counsel for the co-defendant explained that he had only been assigned the case a couple of weeks ago, had only met Ms. Sheafe the week prior and had not even finished reviewing the disclosure with her. Based on this representation, the District Court continued the trial over Defendant's objection. (Doc. 101.)

At another hearing on November 14, 2017, counsel for the co-defendant explained that the week prior he discovered that Ms. Sheafe would need to be evaluated by a battered woman syndrome professional or expert. Counsel for the Defendant again objected noting that the case was almost two years old and the Defendant was in custody.

Counsel also explained that to the extent the battered syndrome issue casts aspersions against his client, he may need to request a severance. The District Court again continued the trial over Defendant's objection. (Doc. 102.) The Defendant never did file a motion to sever defendants.

Finally at a status hearing before the District Court on January 9, 2018, counsel for Ms. Sheafe explained that his client had been interviewed by a medical professional but that the doctor got the flu and needed an additional two weeks to finish writing the report. Counsel requested that a status conference be scheduled in 30 days to determine whether the case would proceed to trial or whether his client would accept a plea agreement. Over Defendant's objection the District Court again continued the trial. (Doc. 103.)

It appears that at each of the hearings, the District Court considered the reasons set forth by co-counsel as well the objections made by the Defendant. Based on those considerations, the District Court found good cause to grant the continuances. Thus, even if the IAD were found to apply, the 120 day time limit was not violated.

**IV.     RECOMMENDATION FOR DISPOSITION BY THE DISTRICT JUDGE**

Based on the foregoing, the Magistrate Judge recommends that the District Court, after an independent review of the record, **DENY** Defendant's Motion to Dismiss Indictment for Violation of Interstate Agreement on Detainers (Doc. 95).

This Recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the District Court's judgment. However, the parties shall have fourteen (14) days from the date of service of a copy of

this recommendation within which to file specific written objections with the District Court. *See* 28 U.S.C. § 636(b)(1) and Rules 72(b), 6(a) and 6(e) of the Federal Rules of Civil Procedure. Thereafter, the parties have fourteen (14) days within which to file a response to the objections. No replies are permitted without leave of court. If any objections are filed, this action should be designated case number: **CR 16-438-TUC-RCC**. Failure to timely file objections to any factual or legal determination of the Magistrate Judge may be considered a waiver of a party's right to de novo consideration of the issues. *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc).

Dated this 27th day of April, 2018.

_____
Honorable Jacqueline M. Rateau
United States Magistrate Judge